# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
RITA MARTIN,                          *
                                      *    No. 14-325V
              Petitioner,             *    Special Master
                                      *    Christian J. Moran
                                      *
v.                                    *    Filed: February 25, 2016
                                      *
SECRETARY OF HEALTH                   *    Findings of fact; onset
AND HUMAN SERVICES,                   *
                                      *
              Respondent.             *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Jeffrey S. Pop and Kristina Grigorian, Beverly Hills, CA, for petitioner;
Traci R. Patton, United States Dep't of Justice, Washington, DC, for respondent.

## RULING FINDING FACTS[1]

On April 21, 2014, Rita Martin filed a petition under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 through 34 (2012). Ms. Martin alleges the tetanus-diphtheria-acellular pertussis ("Tdap") vaccine caused her to suffer postural orthostatic tachycardia syndrome ("POTS"). Pet. at 1. Ms. Martin's expert, Dr. Svetlana Blitshteyn, asserted that Ms. Martin developed "dizziness, fatigue, palpitations, and low blood pressure" within the first three weeks following Tdap vaccination. Exhibit 7 at 2. However, there are no medical records from that time period that include or reference Ms. Martin's symptoms associated with POTS.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

When confronted with discrepancies among medical records and affidavits, special masters are encouraged to hold a hearing to evaluate the testimony of the affiants.  See Campbell v. Sec'y of Health & Human Servs., 69 Fed. Cl. 775, 779-80 (2006).  Such a hearing occurred; and this ruling resolves inconsistent factual details surrounding the onset date of Ms. Martin's dizziness, fatigue, and lightheadedness.

## **Background**

On December 14, 2011, Ms. Martin received the Tdap vaccine.  Exhibit 4 at 606.  On January 4, 2012, Ms. Martin saw a doctor about a bite on her ankle.  Exhibit 4 at 620-21.  There are no medical records that document the symptoms that Ms. Martin alleges was caused by Tdap until March 2012.  Exhibit 4 at 633-34.  On May 14, 2012, Ms. Martin was diagnosed with POTS.  Exhibit 4 at 1275-78.

Ms. Martin filed medical records (exhibits 3, 4, 23, 24, 25) and affidavits (exhibits 1, 5, 6, 27, 32, 33, 36, 38) to support her claim for compensation.  In her affidavit, Ms. Martin states she began experiencing heart palpitations and lightheadedness during the week after the vaccination.  Exhibit 1 at ¶ 7.  Ms. Martin stated that her symptoms increased in severity in the months after the vaccination.  Id.  Ms. Martin filed Dr. Blitshteyn's expert report on April 9, 2014.  Exhibit 7.  The basis for Dr. Blitshteyn's conclusion about onset within three weeks after the vaccination appears in declarations Ms. Martin submitted from her mother, a co-worker, and herself.  Exhibit 7 at 1; see also exhibits 1, 5, 6.

On September 24, 2014, the Secretary filed her Rule 4 report.  The report concluded that there was insufficient evidence to establish that Ms. Martin suffered POTS as a result of the Tdap vaccine.  Resp't's Rep. at 21.

After reviewing the filings in the case, the undersigned determined that there was a factual discrepancy regarding the onset of Ms. Martin's symptoms after the Tdap vaccination.  The parties discussed the factual discrepancy in a status conference held on October 1, 2014.  Ms. Martin attempted to obtain supporting information, especially from her employer and co-workers.  Ms. Martin eventually produced additional evidence supporting her assertion that she suffered symptoms in December 2011 and January 2012.  See exhibits 27, 33, 36, 38.

Pursuant to Campbell, 69 Fed. Cl. at 779-80, a hearing was conducted on September 21, 2015 by videoconferencing.  Six witnesses testified: Ms. Martin's mother, Ms. Martin's brother, three co-workers, and Ms. Martin.  The undersigned

has considered all evidence, both documentary and testimonial, and findings of facts are ready to be made.

## Standards for Finding Facts

The standards for resolving findings of fact are sufficiently established that they need not be repeated here.  For a detailed account, see <u>Bayless v. Sec'y of Health & Human Servs.</u>, No. 08-679V, 2015 WL 638197, at *2 (Fed. Cl. Spec. Mstr. Jan. 15, 2015).

## Specific Findings of Fact

The issues are when Ms. Martin's symptoms of palpitations, lightheadedness, and dizziness began.

Ms. Martin stated that her symptoms of palpitations, lightheadedness, and dizziness started the week after the vaccination.  Exhibit 1 at ¶ 7.  Ms. Martin filed affidavits from co-workers and family members that also stated her symptoms began shortly after vaccination.  Exhibit 7 at 1; see exhibits 5, 6, 27, 32, 33, 36, 38.

However, three medical records from March to April 2012 suggest palpitations and lightheadedness were relatively recent in origin.  On March 26, 2012, Ms. Martin told her doctor she only had palpitations and denied lightheadedness.  Exhibit 4 at 634.  On April 2, 2012, Ms. Martin reported she had palpitations and also felt lightheaded "more consistently over the past month." Exhibit 4 at 657.  On April 11, 2012, she reported that she was experiencing dizziness and "intermittent lightheadedness" starting two weeks prior.  Exhibit 4 at 677.

While Ms. Martin argued her symptoms began shortly after vaccination, the medical records from March and April 2012 suggest they began around the time of the doctors' visits.   Medical records created contemporaneously with the events they describe are presumed to be accurate.  <u>Cucuras v. Sec'y of Health & Human Servs.</u>, 993 F.2d 1525, 1528 (Fed. Cir. 1993).  According to this principle, Ms. Martin's lightheadedness and palpitations most likely started in March and April 2012.

Ms. Martin argued these medical records are ambiguous for three reasons: (1) people do not necessarily visit a doctor when first experiencing a problem, as was her case, and when she did visit, the descriptions of her symptoms in the medical records are ambiguous; (2) the employment records do not accurately

3

portray her health; (3) testimony proffered by her co-workers corroborates her assertion that her symptoms began shortly after vaccination. See Tr. 225-3. Ms. Martin's arguments are evaluated respectively below.

## Timing of Medical Treatment and Medical Records

Ms. Martin stated she did not seek treatment when her symptoms began in December 2011, because nurses with whom she worked provided her with informal medical guidance. Tr. 232-33. Thus, she argued, the medical records do not mark the true onset of her symptoms. Furthermore, Ms. Martin asserted the wording of her symptoms in the medical records from March and April 2012 is ambiguous. Tr. 228-30.

These arguments are not persuasive for two reasons: (1) the experience in late March, while Ms. Martin was still at work, demonstrates Ms. Martin would seek care directly from a doctor when she was ill, see exhibit 4 at 634; (2) when Ms. Martin sought treatment, her contemporaneous statements imply that her symptoms began relatively recently. See exhibit 4 at 634, 657, 677.

The first reason is also supported by Ms. Martin's doctor's visit in January 2012. She sought medical attention for a bite on her ankle on January 4, 2012. Exhibit 4 at 619-21. The visit further demonstrates the she would seek direct care if she had a medical issue. In addition, the record from this visit does not mention any other symptoms besides those related to skin irritation from the bite. Exhibit 4 at 619-21. The absence of a complaint about palpitations and lightheadedness implies that Ms. Martin was not experiencing palpitations and lightheadedness on January 4, 2012.

Ms. Martin has also failed to demonstrate ambiguity in the medical records considered as a whole. While the phrase "more consistently over the past month," exhibit 4 at 657, can imply less consistency for a longer time, there are no written

4

records that suggest Ms. Martin told her doctors during the visits in March or April 2012 that her symptoms began back in December 2011.

### Employment Records

Ms. Martin worked at Alta Vista Healthcare & Wellness Centre as a Certified Nurse's Assistant until April 2012.[2] Tr. 66-67. The employment records support a finding that in early 2012, Ms. Martin was relatively healthy. From second quarter 2011 through first quarter 2012, she earned approximately the same amount per quarter. Exhibit 28 at 2. It was not until the second quarter of 2012 that Ms. Martin's earnings dropped by half. See exhibit 30.

This quarterly information corresponds to bi-weekly information. In the two-week pay period ending February 15, 2012, Ms. Martin worked 69.75 hours. Exhibit 30 at 8. Ms. Martin's ability to work nearly a full schedule certainly suggests that she was not experiencing any significant ill health.[3]

Although petitioner's counsel recognized Ms. Martin worked approximately the same number of hours in early 2012 as she worked in 2011, counsel argued that Ms. Martin was able to take short breaks during the day. See Tr. 231-32. If so, this shows only that any episodes of lightheadedness were not so severe as to interfere with her ability to complete at least a substantial portion of her shifts. See Tr. 137-41.

### Testimony of Co-workers

Ms. Martin's co-workers, ranging in amount of contact and familiarity with her, testified to her changes in behavior beginning shortly after the vaccination. See Tr. 10-33, 33-58, 169-90. Ms. Martin argues that her co-workers' testimony should be credited because they are unbiased observers. See Tr. 226-27.

The witnesses' lack of bias is not the issue. The problem is the witnesses' ability to perceive Ms. Martin's health and their ability to recollect their perceptions when they testified approximately 3.5 years later. See La Londe v.

---

[2] The undersigned notes Ms. Martin earned the "Employee of the Month Award" two times: the first in April 2010 and the second in August 2011. Tr. 68-69.

[3] Ms. Martin testified that she worked because she needed money, Tr. 147, but the employment records indicate she could have taken sick time. See exhibit 30.

Sec'y of Health & Human Servs., 110 Fed. Cl. 184, 203 (Fed. Cl. 2013) (noting that testimony may be given inaccurately, due to faulty memories or mendacious intent), aff'd, 746 F.3d 1334 (Fed. Cir. 2014).

Ms. Martin, obviously, knew more about her health from December 2011 through April 2012 than any of her co-workers. When she spoke to her doctors in March and April 2012, she told them that heart palpitations and lightheadedness started around that time. There is no evidence that Ms. Martin told any doctor that her symptoms began back in December 2011. Her co-workers' testimony did not carry sufficient probative weight to overcome the presumption about the accuracy of contemporaneously created medical records.

The undersigned finds that Ms. Martin's symptoms, more likely than not, began in March and April 2012 because her symptoms are mentioned for the first time in the medical records contemporaneous to that time. Specifically, the undersigned finds the following onset timeline based on the medical records:

- Ms. Martin's palpitations began "a few days" before March 26, 2012, but her lightheadedness had not yet begun. See exhibit 4 at 634.

- She began to experience lightheadedness[4] "on and off" after March 26, 2012. Between March 26, 2012, and April 2, 2012, Ms. Martin experienced palpitations with increasing frequency. See exhibit 4 at 657 (stating that she had problems "more consistently").

- Her dizziness began on approximately April 3, 2012. See exhibit 4 at 677.

## Conclusion

The parties are ordered to provide these Findings of Fact to any expert whom they may retain to offer an opinion in this case. An expert's assumption of any fact that is inconsistent with these findings of fact will not be credited. Burns v. Sec'y of Health & Human Servs., 3 F.3d 415, 417 (Fed .Cir. 1993) (holding that the special master did not abuse his discretion in refraining from conducting a

---

[4] Ms. Martin's brother described an isolated episode of lightheadedness. Exhibit 38 at ¶¶ 5-6. This testimony is credited as reliable.

6

hearing when the petitioner's expert "based his opinion on facts not substantiated by the record").

A status conference is set for **Friday, March 18, 2016 at 2:30 P.M. Eastern Time.** The parties should be prepared to discuss the next step in this case.

**IT IS SO ORDERED.**

S/Christian J. Moran
Christian J. Moran
Special Master